### GRANT v. PRATT & LAMBERT.

(Supreme Court, Appellate Division, First Department. June 22, 1900.)

1. CONTRACTS—BREACH—ACTION

Plaintiff agreed to furnish a formula for the manufacture of a varnish, and to instruct defendant and its employés in such manufacture, and the secrets thereof. Defendant agreed to pay plaintiff a royalty on varnish so manufactured, and that such royalties should aggregate a certain amount, and that it would not cease to manufacture such varnish until the royalties aggregated the stipulated amount. The agreement provided for liquidated damages in case of its breach. *Held* that, if plaintiff failed to give the necessary instructions to defendant's employés to enable them to produce a good quality of varnish according to the formula, he could not maintain an action to recover damages for failure to manufacture.

2. TRIAL—QUESTION FOR JURY—DIRECTED VERDICT.

It was error to direct a verdict for plaintiff when the evidence tended to show that he had not exercised good faith in attempting to instruct defendants in the process of manufacturing according to his formula, since such question should have been submitted to the jury.

3. EVIDENCE—WRITTEN ADMISSIONS—QUALIFICATIONS.

An answer in an action for breach of a contract, which provided that plaintiff would furnish a formula for the manufacture of a varnish, and instruct defendant's employés in the secret of manufacturing according to plaintiff's formula, and that defendant would, during a certain term of years, and until the royalties aggregated $50,000, manufacture and sell such varnish, and pay plaintiff a royalty thereon, admitted that defendant had not manufactured varnish according to plaintiff's formula for several years. The answer also denied that it had refused or neglected to manufacture or sell as provided by the contract, or that in ceasing to manufacture it had done any act in violation of the terms of the contract. *Held* that, since the answer must be considered as a whole, it cannot be construed as admitting a breach of the contract, but that by reason of other facts it had been excused from manufacturing.

4. SAME.

A letter from defendant to plaintiff, stating that it had ceased to manufacture for the reason that it could not get satisfactory results, and requesting plaintiff to demonstrate that a salable article could be made according to his formula, is not an admission of a breach of the contract.

5. TRIAL—QUESTION FOR JURY.

A contract provided that, in case of its breach by defendant within two years from its execution, plaintiff should be entitled to a certain sum as liquidated damages, and that if it occurred thereafter he should be entitled to a greater sum as liquidated damages. *Held*, in an action for breach of the contract, that it was error to direct a verdict for the larger sum,

when there was evidence tending to show that the breach occurred during the first two years.

**6. CONTRACTS—WAIVER OF PERFORMANCE.**

Plaintiff entered into an agreement with defendant whereby he agreed to furnish a formula for the manufacture of varnish, and to instruct defendant's employés how to make it. Defendant in consideration thereof agreed to pay plaintiff a stipulated royalty on each gallon manufactured and sold, and that he would not cease to manufacture and sell until the royalties aggregated $50,000. It was further guarantied by defendant that the royalties for the first five years should aggregate the sum of $2,-300 per annum. The contract further provided that, in case of defendant's failure to perform the contract, plaintiff should be entitled·to a certain sum as liquidated damages. Defendant, within two years after execution of the contract, ceased to manufacture according to plaintiff's formula, but paid to plaintiff the minimum amount of royalties provided for by the contract for the first five years. *Held* that, though plaintiff protested against defendant's failure to manufacture according to his formula, plaintiff's acceptance of the money with knowledge of defendant's claim that it was in full performance of the contract was a waiver of defendant's agreement to manufacture according to the formula.

**7. LIQUIDATED DAMAGES—PARTIAL BREACH—MEASURE OF RECOVERY.**

Where in an action on a contract which provides that in case of failure to perform plaintiff shall be entitled to a certain sum as liquidated damages, it appears that there has been only a partial breach, plaintiff is entitled to recover only such actual damages as he may have sustained.

Appeal from trial term.

Action by W. Wallace Grant against Pratt & Lambert to recover for breach of a contract. From a judgment in favor of plaintiff entered· on a directed verdict, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, and INGRAHAM, JJ.

Lewis Cass Ledyard, for appellant.

Treadwell Cleveland, for respondent.

HATCH, J. The plaintiff brings this action to recover liquidated damages for the breach of a written contract entered into by the parties thereto on the 26th day of January, 1893. It appeared from the contract and the evidence that the plaintiff was possessed of the exclusive knowledge and ownership of certain inventions, formulas, secrets, and process for the manufacture of varnishes. The defendant was a manufacturer and dealer therein, and for the purpose of placing the invention of the plaintiff upon the market the contract was executed. By its terms, so far as is important to any questions which the case presents, the plaintiff agreed to deliver to the defendant the process and formulas by which the varnish was to be manufactured, and to instruct the defendant and its employés in such manufacture, and the secrets thereof. In consideration the defendant agreed to pay royalties therefor, not exceeding in the aggregate the sum of $50,000, computed at 25 cents a gallon for varnish listed at a price of $3·or over per gallon, and for all under that price 5 cents per gallon; upon mixtures of these grades, the royalty to be calculated on the basis of the amount and value of the ingredients entering into the mixture. It was guarantied that these royalties for the first five years should equal at least $2,300 per annum, of which

$2,500 was to be paid upon the execution and delivery of the contract and formulas, and charged against the royalties at the rate of $41.66 per month for five years; also $1,800 per annum in monthly sums of $150 at the end of each month for the period of five years, the whole to be charged against the maximum sum of $50,000. The defendant further agreed not to cease to manufacture, sell goods, and pay royalties until the full amount of $50,000 should be paid; "and the party of the first part [defendant] agrees immediately to enter upon, and by all reasonable endeavors to push, the manufacture and sale of all grades of said goods, and at all times to actively continue such manufacture and sale to any and all extent that the market will warrant, until the said royalties of fifty thousand dollars shall have been paid." Accounts were to be kept, and verified statements rendered, as required by the plaintiff, not oftener than once in each month. The defendant reserved the right to purchase plaintiff's factory and interest in the invention within two years for $35,000, or to exclude the property and pay $22,500, in which event, if defendant exercised the option, plaintiff's interest in the inventions, etc., and rights under the contract, should cease, and the whole become the property of the defendant. The contract also recited that, in view of the surrender by the plaintiff of his invention, process, etc., he lost control of the same. Therefore it was covenanted that for a breach of the contract by the defendant damages should be liquidated at the sum of $22,500 if the breach occurred within two years after the date of the contract, and $35,000 if the breach occurred after that time; all the payments made upon the contract to be deducted from the respective sums to be awarded as damages.

After the execution and delivery of the contract the parties entered upon its performance, and the defendant made payments thereunder, as required by its terms, until the 11th day of February, 1898, amounting in all to the sum of $11,500, which the plaintiff accepted and retained. On the last-named date the defendant sent its check for the monthly payment of $150, and notified the plaintiff that with the payments already made this fulfilled the terms of the contract, and it requested a receipt in full of its terms. The plaintiff declined to give a receipt in full or discharge the defendant from liability under the contract, although he retained and receipted for the amount of the payment. Prior to the last-named date differences had arisen between the parties respecting the terms as well as the fulfillment of the contract, and on August 2, 1897, the plaintiff began this action to recover damages for a claimed breach of the same.

The complaint is framed upon the theory that there was a breach of the contract in failing to manufacture and sell the varnish and pay royalties thereon as expressly provided in that clause of the contract hereinbefore quoted. At the close of the proof, the defendant having offered no evidence, the defendant moved to dismiss the complaint upon the ground, among others, that no breach of the contract was established; that, if any breach had been established, it had been acquiesced in by the plaintiff and waived by continuing under the contract; and that, in any event, only nominal damages could be recovered, as there was no proof of any actual damages. This mo-

tion was denied. Thereupon plaintiff moved for the direction of a verdict in his favor. The defendant then asked to go to the jury upon certain specified grounds: First, as to when the breach of the contract occurred; second, what the damages suffered by the plaintiff were, if any; third, whether, if any breach of the contract was established, the plaintiff did not waive the same. And the defendant asked the court to instruct the jury that, if the plaintiff was entitled to any liquidated damages at all, any breach shown to have occurred, occurred during the first two years of the contract; that, therefore, $22,500, less the amount of royalties received by the plaintiff, is the limit of any possible recovery. All the defendant's motions and requests were denied by the court, and exceptions thereto were taken. The court directed a verdict for the plaintiff for the sum of $27,025, which, with interest, less the sum paid as royalties, represented the largest sum reserved as liquidated damages under the contract. An appeal from the judgment entered thereon, and from the order denying a motion for a new trial, brings the matter before this court.

It is quite evident that the varnish which it was expected would be manufactured from the formulas furnished by the plaintiff under the contract would be of an uncertain quality, which might not answer the requirements of the trade. The terms of the contract show plainly that this contingency was contemplated, as therein the plaintiff was to furnish the secret formulas from which the manufacture might be made, instruct the employés in the process, continue and renew such instruction in such formulas and secret process, and in such as he might thereafter devise, to the end that they might be practically used and applied. The defendant was to manufacture such goods, and continue actively therein, to the extent that the market for the same warranted. This requirement evidently contemplated that to some extent, at least, experiments would be had in the production of the varnish, in order to make an article which would be salable in the market. Prior to the execution of the contract the plaintiff had been engaged in an extended series of experiments covering a period of some years, in an endeavor to produce a superior article of varnish, in which the main object seemed to consist in obtaining a product pale in color, which would resist the action of sulphide of hydrogen generated by engines, and operating disadvantageously upon the varnish applied to cars, and also to resist the fumes of ammonia generated in stables to which carriages were exposed. The plaintiff claimed to have solved this problem, but the product of his experiments had not been extensively used in practical application, and its success rested for the most part in tests to which it had been subjected. It was under these circumstances that the contract was executed.

The process by which this varnish was produced clearly shows that not only was considerable skill required in selecting, preparing, and mixing the ingredients, but great care was required in applying heat, and the most careful attention was necessary in order to detect the simmering noise which indicated when the temperature was to be reduced by the introduction of cold oil. The whole operation seems to

have been one of much delicacy, and slight departures destroyed perfect, even good, results. In the nature of the case, therefore, it is evident that the parties understood when they contracted that the production of the varnish in marketable quantity and quality involved more or less of experiment, and, while it is equally evident that both parties believed that the process was able to produce a superior varnish, yet the plaintiff knew the difficulties attending its production, and the defendant knew that it had never been produced in marketable quantity and practically applied. The contract is therefore to be construed as contemplating and providing for the production of an article which to some extent was experimental. If more were needed to prove that the contract is to be construed in this light, the acts of the parties thereunder, as disclosed by the evidence, are abundant to support the view. The plaintiff was at the factory in Jersey City for a considerable period of time instructing O'Brien, an employé, in the process of manufacture. Some good varnish was produced, and O'Brien was left in charge. Complaint of the varnish thereafter produced was made by the defendant to the plaintiff, and he was requested to instruct Sharkey, the superintendent at the Long Island City factory. These complaints were heeded by the plaintiff, and he wrote instructions, and made one attempt to instruct Sharkey, which seems to have failed. At another time he refused to proceed, claiming that the ingredients were not proper, and that a gas furnace was not provided. The correspondence shows some dispute upon these subjects, and different inferences are deduced therefrom. For the present we are not concerned with these. There is no dispute but that both parties understood that experiment was necessary, not only with the ingredients and appliances which were required, but with the operator. It was as much an experiment to find an employé who could be properly instructed in the complicated process of manufacture as it was to select and properly mix the ingredients, and it is clearly evident that a serious duty in this respect was devolved upon the plaintiff. It is therefore plain that the utmost good faith was required at the hands of the plaintiff. If he failed to give the necessary instruction to the employés to enable them to produce a good quality of varnish according to his formula, then he would be guilty of a breach of the contract himself, and this would excuse the defendant's act, as it could not be expected to sell the varnish manufactured by the plaintiff's formula if the necessary instruction had not been imparted to enable it to produce, and a breach of the contract could not be predicated upon such a failure.

For present purposes, we assume that the plaintiff's formula which he delivered to the defendant only contemplated or called for the 113 varnish, and that the 871 was a mere product in the process of its manufacture. The testimony of the plaintiff is that he never made but one run of this varnish in connection with O'Brien, and that he never instructed any one else how to make it. It is not pretended that he made 113 in connection with Sharkey. The latter failed to give his attention with sufficient quickness to hear the simmer indicating the critical point when the temperature was to

be reduced by the addition of oil, and he failed to gain the necessary knowledge. So far as appears, although he was the defendant's superintendent and charged with the duty of producing the varnish, he never knew how to produce this varnish, and he was never instructed by the plaintiff therein. As to O'Brien, he could only have witnessed one run, as that is all that was made in his presence by the plaintiff. It is this particular varnish 113 that the plaintiff now insists should have been manufactured, and for the failure of such manufacture, and the payment of royalties thereon, the defendant has been adjudged guilty of a breach of the contract.

It is clearly evident that, if there was fault in the plaintiff in the respect we have mentioned, the defendant could not be charged properly with a breach, or cast in damages. Upon such question the answer could only be properly returned by a jury. The extent of the instruction, and whether it was sufficient, and the good faith of the plaintiff in connection therewith, after complaints and requests were made to him for instruction in manufacture, were questions of fact, and bore directly upon the breach of the contract which the plaintiff claimed. The evidence upon which the plaintiff relied to establish an admitted breach of the contract consisted of an admission contained in the answer of the defendant, and in a statement made in a letter written by the defendant bearing date June 25, 1896.

The rule governing the effect of admissions contained in a pleading requires that the matter shall be taken as a whole, and the admission is limited by any statement therein which qualifies or explains. Oakley v. Oakley, 69 Hun, 121, 23 N. Y. Supp. 267, affirmed on appeal 144 N. Y. 637, 39 N. E. 494. It cannot be extended beyond its fair import. Duschnes v. Heyman, 2 App. Div. 354, 37 N. Y. Supp. 841. And the same rule is applicable to any written admission connected with other matter in the same writing or referred to therein. The matter in the answer upon which reliance is had admits that it has ceased for several years to manufacture and use any varnish manufactured according to formulas furnished by the plaintiff. But this statement is preceded by a denial that it has refused or neglected to manufacture and sell as provided by the contract, and it is followed by a denial that in so ceasing to manufacture it has done any act in violation of the terms of the contract as provided in the last paragraph of the second clause of the contract, upon the violation of which the claim of a breach is founded. It is evident from the discussion already had and the evidence in the case that this part of the answer, taken as a whole, may constitute a perfect defense to the plaintiff's claim. It may be taken as an admission that it has ceased for many years to manufacture; but, coupled with the fact that its act in so doing was not a breach of the contract by reason of other acts for which the defendant was not responsible, it is by no means clear that the failure to manufacture according to the particular formula furnished constituted a breach of the contract; for, as we have seen, there were to be mixtures and different grades of varnish. If any part of the formula was used, defendant was to pay royalty; and, as it was in fact paid and accepted, the parties may be said to have placed practical construction on the contract. In any event,

it is quite clear that this averment of the answer did not admit a breach of the contract considered as a whole, and in connection with the other evidence in the case. The same is also true of the letter. It states that the last time the defendant tried to make the varnish according to formula was in July, 1894. But this is followed by the assertion that the results were not satisfactory, and that their experience did not enable them to make a salable article, and the plaintiff was requested to superintend the manufacture, and demonstrate that it could be produced by his formula. It is not only manifest that this was not an unqualified admission of a breach of the contract, but, on the contrary, it is quite consistent with an assertion that the defendant was unable without the help of the plaintiff to manufacture the article. This help the plaintiff was bound to give. No admitted breach can be predicated of this evidence, and from all that does appear it is quite clear that the questions at issue in this respect were questions of fact. In addition to this we are unable to find any evidence, assuming that there was a breach, as to when the breach took place prior to the commencement of the action. The answer does not fix any date. Its statement is general that for several years the defendant has ceased to manufacture. As this statement was made in December, 1897, it might bring it within the first two years after the execution of the contract. The letter is more specific, and fixes the date when it ceased to manufacture, or attempt to, in July, 1894. The plaintiff, however, states that he knew that the defendant did not manufacture from the formula from the beginning. This question was of importance. If the breach occurred in the first two years of the contract, the damages were measured at the sum of $22,500, less payments. The plaintiff insists that the breach consists in failing to manufacture 113, and of this breach he says he knew almost at the beginning of performance of the contract. Why, then, was it not a question of fact as to when the breach occurred? And, if so, and it was within the first two years, upon what basis could the court award judgment for the larger sum stipulated as liquidated damages?

But, aside from these considerations, it is conceded that during the whole period, from the date of the contract up to the commencement of the action, the defendant was manufacturing varnish, selling the same, and paying the plaintiff royalties thereon. It was also paying the stipulated monthly sum, and, indeed, it continued to pay under the contract after the commencement of the action, and until the expiration of the five years time specified therein. The plaintiff, it is true, protested against the course of business, and made demands from time to time that it be changed, and that more varnish be manufactured, and in accordance with his formula. Yet he did not at any time refuse the payments as made, but accepted the same in their entirety. There is no dispute of fact upon the subject. It was competent for the plaintiff to waive the manufacture of varnish under his formula, and to accept what was tendered as being in fulfillment of the contract. As he knew the breach of the contract in the beginning, assuming that failure to manufacture 113 constituted a breach, and accepted performance of the contract thereafter as it

was performed by the defendant, it constituted a waiver of such conditions as he might have insisted upon prior thereto. Lawrence v. Dale, 3 Johns. Ch. 23; Dunn v. Steubing, 120 N. Y. 232, 24 N. E. 315; Schiffer v. Dietz, 83 N. Y. 300; Gallagher v. Nichols, 60 N. Y. 438. The duty rests upon the party to act promptly upon the first discovery of the breach. He may not accept acts which are insisted upon as a performance of the contract by the other party, and then be permitted to rescind, and sue on the breach. Meyer v. Hallock, 2 Rob. 284; American Manganese Co. v. Virginia Manganese Co. (Va.) 21 S. E. 466. Nor can a party avoid the legal consequence of such act by protesting that he does not subject himself to the consequences of it. U. S. v. Lamont, 155 U. S. 303, 15 Sup. Ct. 97, 39 L. Ed. 160.

As the proof stood at the close of the case, the defendant was entitled to have its motion granted to dismiss the complaint upon this ground. In the event that the proof in this respect should be changed upon another trial, and the plaintiff should make proof requiring the questions involved to be submitted to a jury, it is quite evident that a serious question would be presented upon the right of the plaintiff to recover liquidated damages in any sum. It would seem that, where a party has accepted what is claimed to be a performance of the contract, if he thereafter be entitled to maintain an action upon the contract for the breach, his measure of recovery would be the actual damages, and not the liquidated sum, and this for the reason that the latter sum is provided for an entire breach of the contract. As an entire breach, in any event, did not occur prior to the commencement of the action, and as in part, at least, there was performance which was accepted, the parties have changed their right in this respect, and plaintiff is relegated to the recovery only of such damage as has been sustained. Shute v. Taylor, 5 Metc. (Mass.) 61. It is true that no requests were made to go to the jury upon the question whether there had been in fact a breach of the contract, but there was a motion to dismiss the complaint upon the ground that if there had been any breach it had been waived. There was also a request to go to the jury upon the question as to when the breach occurred and upon the question of damages. The refusal of the court to grant these requests sufficiently presents legal error.

It follows that the judgment and order should be reversed, and a new trial granted, costs to appellant to abide event. All concur.