### GRANT v. PRATT & LAMBERT.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

1. CONTRACT—TIME OF BREACH—EVIDENCE.

Evidence, in an action for breach of a contract to manufacture varnishes according to plaintiff's formula, stipulating for certain damages if it be breached within two years, and for greater damages if there be breach of it thereafter, *held* sufficient to sustain a finding that the breach was more than two years after the making of the contract.

2. ARBITRATION AND AWARD—AGREEMENT TO ARBITRATE—"DISPUTES."

The right of plaintiff to recover the damages provided by his contract with defendants, if they cease to manufacture as therein stipulated. is not such a dispute as is contemplated by the clause of the contract providing that any dispute between the parties shall be referred to and decided by arbitrators, and that no action shall be brought by either party, except to enforce a decision of such arbitrators.

[Ed. Note.—For cases in point, see vol. 4, Cent. Dig. Arbitration and Award, § 28.]

3. SAME—EFFECT AS DEFENSE.

A clause in a contract providing for arbitration of any dispute, and that no action shall be brought by either party, except to enforce a decision of such arbitrators, is no defense to an action to recover on the contract, in the absence of evidence that before commencement of the action defendants insisted on their right to arbitrate or took steps to carry out the agreement therefor.

[Ed. Note.—For cases in point, see vol. 4, Cent. Dig. Arbitration and Award, § 30½.]

Ingraham and Patterson, JJ., dissenting.

Appeal from Trial Term, New York County.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

John C. Milburn, for appellant.
Edward M. Shepard, for respondent.

O'BRIEN, P. J. I agree with the opinion of Mr. Justice INGRAHAM upon all the questions discussed, except as to the date of the breach, and from his views upon that subject I dissent. He states in his opinion that:

"The plaintiff was entitled to have the jury instructed that from the undisputed evidence the breach occurred within two years from the date of the contract."

This is not in accord with my view of the evidence. The contract was dated January 26, 1893, and in my opinion the evidence shows that the breach did not occur prior to that time, but, on the contrary, that it occurred, as found by the jury, in the year 1896.

Upon the trial it was established that from the beginning of operations under the contract there were disagreements between the parties thereto; the plaintiff asserting that the defendant did not manufacture the high-grade varnishes in the quantity required by the contract, and the defendant claiming that the varnishes, when made from plaintiff's formulæ, were not of the quality represented, and did not satisfy the requirements of the trade. In answer to this the plaintiff in turn alleged, and introduced evidence to support the claim, that whatever imperfections existed in the varnishes were caused by the improper and defective implements furnished for its manufacture by the defendant, and by incompetent and unskillful operators employed by it against plaintiff's protest.

Although this mutual dissatisfaction existed almost from the time the contract was executed, it appears, nevertheless, that until June, 1898, both parties were endeavoring to adjust the difficulties, and the defendant gave no intimation until that time that it would refuse to carry out the contract. That instrument provided that the plaintiff might require the defendant to furnish a monthly report of its operations under the contract, "to be verified by the oath of one of of its officers, and with this requirement it complied, not only prior to January 26, 1895, but also after that date. In March of the latter year it furnished such a verified report, which stated:

"The following is the report of varnish made and sold under our agreement with you."

And to this was appended a detailed statement showing 298 gallons sold for a price exceeding $3 per gallon, and 1,505 gallons for a price less than $3 per gallon. On June 12, 1895, a further report was made by the defendant, verified by its treasurer, showing the sale of over 14,000 gallons of varnish, and containing the statement:

"We give below the report for March, April, and May, and the same has been placed to the credit of your account."

Other reports were introduced in evidence showing sales under the contract for the months of June, July, August, September, October,

and November, 1895; and upon December 7th the defendant furnished to the plaintiff, at his request, a summary of the amount of business done during the year under the contract which showed the manufacture and sale of 3,726 gallons of varnish listed at above $3 per gallon, and of 25,817 gallons of varnish listed below $3 per gallon. Particular attention should be given to the statement that the defendant in this report that it proposed to live up to the contract strictly. This statement was made many months after the two-year period; and certainly the plaintiff had the right to rely upon it, and to proceed upon the assumption that whatever differences might exist between him and the defendant would be amicably adjusted. Nor can the defendant complain if the jury accepted as true its written statement that it then regarded the contract as an existing obligation and proposed to carry out its requirements.

This situation remained unchanged during the first half of the following year. Further verified reports were furnished by the defendant on January 19, 1896, February 13th, March 11th, April 6th, and May 12th; all of them containing the statement that during the respective months the defendant had made and sold from plaintiff's formulæ the amount of varnish specified. On June 12, 1896, the defendant, in answer to a letter from the plaintiff, wrote that it had "fully carried out its contract," had "made goods in precise conformity to the formula," and had "energetically pushed their sale, only to find that quantities were thrown back on its hands by purchasers." This was an assertion of performance, with a reiteration of the original complaint heretofore alluded to, and the letter further indicated that the defendant then considered the contract in force, for it suggested that the plaintiff visit its factory and superintend the manufacture of the varnish. In June, however, according to plaintiff's testimony, he was requested by the defendant's treasurer, Andrews, to call upon him, and in that interview Andrews asserted in substance that, while the contract was still in force, he thought it could be broken, and he proposed to attempt to do so, as he did not regard it as an advantageous contract for the defendant to be burdened with. This, the plaintiff claims, was the first intimation given to him by the defendant that it would repudiate the contract, and he testified further that at this interview he was told by Andrews that the defendant had not made varnishes from his formulæ since Andrews came into the premises, which was in April or May, 1895. It was shortly after this that the letter of June 25, 1896, referred to in the prevailing opinion, was written, which letter contained the statement that the last time the defendant had tried to make goods according to the plaintiff's formulæ was under his direct supervision in July, 1894. That assertion, as well as the statement made by Andrews, is, however, directly contradicted by the fact, already alluded to, that up to May, 1896, the defendant continued to furnish monthly verified reports, alleging that it was manufacturing goods under plaintiff's formulæ or under this contract. In addition to this it will be observed that, while the May report and those preceding it state that the goods theretofore sold had been manufactured from plaintiff's formulæ, the following report, dated June 12, 1896, recites

that the goods sold during the month were made from plaintiff's
formulæ only "in part."

This evidence, considered together, might well have satisfied the
jury, as it apparently did, that up to June, 1896, both parties were
performing the contract to the best of their ability, but that in the
last-mentioned month the defendant changed its position, broke the
contract for the first time, and for the purpose of lessening its
damages sought to shift the breach so that it might appear to be
within the two-year period. Until after Andrews' threat in that
month it continued sending plaintiff its sworn monthly statements,
acknowledging its indebtedness to him under the contract; and the
jury were justified in relying upon the verified reports, as well
as upon the other evidence referred to, and in finding that the
defendant, until June, was in good faith attempting to manufacture
and sell plaintiff's varnishes in the quantity which the trade de-
manded, and that the breach occurred in that month, when Andrews,
representing the defendant, substantially repudiated the contract in
the interview with plaintiff, and thereafter wrote the letter of June 25th.

If my conclusion in this respect is right, then the plaintiff was
entitled to the larger sum which became due after the expiration of
the two-year period; and, the verdict being for this amount, the
judgment entered thereon, and the order appealed from, should be af-
firmed, with costs.

LAUGHLIN and CLARKE, JJ., concur.

INGRAHAM, J. (dissenting). This case has been twice tried be-
fore this court; on the first appeal (52 App. Div. 540, 65 N. Y.
Supp. 486) from a judgment entered upon the verdict of a jury
in favor of the plaintiff. The judgment was reversed upon the
ground that upon the whole evidence there was no breach of the
contract by the defendant. On the second appeal (87 App. Div.
490, 84 N. Y. Supp. 983) a judgment for defendant was reversed
upon the ground that upon the evidence of the plaintiff it was a
question for the jury as to whether or not there was a breach of the
contract by the defendant. Upon the third trial the question was sub-
mitted to the jury, who has found a verdict for the plaintiff, and
from the judgment entered thereon the defendant appeals. The
nature of the action, and the evidence to sustain the plaintiff's cause
of action, are stated in the opinions before delivered, and it is un-
necessary to restate it. It will only be necessary to refer to the points
made by the learned counsel for the appellant upon which he bases·
his right to a reversal of the judgment.

The contract, for a breach of which this action is brought, was
in writing, and the first point arises from a clause in the contract,
which is as follows:

"To the end that the secrecy of all such processes, inventions, secrets and
formulas may be preserved it is especially covenanted and agreed that any
dispute between the parties hereto shall be referred to and decided by three
arbitrators who shall be suitable, disinterested and competent; *  *  *
and no suit, action or legal proceeding of any nature shall be brought by either

party except to enforce a decision of such arbitrators or to compel their appointment."

In its answer the defendant sets forth this clause of the contract and alleges:

"That, notwithstanding the said agreement contained the aforesaid provision, the plaintiff has instituted this suit without referring, or offering to refer, the dispute existing between him and the defendant to arbitrators, as provided in the aforesaid agreement, although the said defendant has at all times been ready and willing, and now is ready and willing, to refer any dispute between itself and the plaintiff, arising out of the aforesaid agreement, to arbitrators as above provided."

It is apparent that a dispute between the parties had existed for some time prior to the commencement of the action, but it is not alleged, nor was there any proof offered to show, that the defendant had at any time offered to submit this question in dispute between the parties to arbitrators, or made any effort to carry out this clause of the agreement. The action is brought to recover the amount provided by the contract to be paid in the event that the defendant should become insolvent or should fail in any way to keep and perform all of the terms of the agreement on its part to be kept and performed; the plaintiff claiming that the defendant failed to comply with its agreement, and thus became liable to pay, under this clause of the agreement, the sum of either $22,500, if the default should be within the first two years after the execution of the contract, or the sum of $35,000, if such default should be subsequent to the first two years after the execution of the contract. I do not think that the right to recover such a demand would, strictly speaking, come within this arbitration clause as a dispute between the parties hereto. It seems to me that it was intended by that clause to provide for a dispute in relation to the performance of the contract during its continuance, not a dispute as to the right of the plaintiff to an amount which, by the terms of the contract, became due to him. This contract was to continue until, under its provisions, the sum of $50,000 had been paid by the defendant to the plaintiff for royalties, as therein provided. During the time that the contract was in force there might be many disputes as to the duties or obligations of the parties to each other which would not relate to the amount due by one party to the other under the contract. The plaintiff's claim here is that, in consequence of the defendant having refused to go on with the contract and manufacture this varnish as required by it, the sum fixed became due and payable, and it is that sum of money that the plaintiff seeks to recover. If the plaintiff's contention is correct, all that was necessary was to ascertain the amount due to the plaintiff under the provisions of the contract. This was not, I think, such a dispute between the parties as was contemplated by the arbitration clause; but the rule is well settled that such a clause is no defense to an action to recover upon a contract, in the absence of evidence that before the commencement of the action the defendant took steps for the selection of arbitrators and to perform this arbitration agreement on its part. As was said in Smith v. Alker, 102 N. Y. 87, 5 N. E. 791, in speaking of a point made by the appellant

97 N.Y.S.—3

that the dispute between the parties should have been submitted to arbitration under the clause in the contract:

"No evidence was given that the defendant took any steps for their selection. It was not any more the duty of the plaintiff than that of the defendant to do so."

Certainly, in the absence of evidence that the defendant insisted on its right to arbitrate, or took some steps to carry out this agreement, when the dispute between the parties arose, such a covenant is not a defense to an action to recover the amount due under the contract. I think that the question as to whether the plaintiff performed the contract on his part, and whether the defendant performed the contract on its part, were questions for the jury, and were properly submitted to them by the learned trial judge for the reasons stated on former appeal. 87 App. Div. 490, 84 N. Y. Supp. 983.

There is, however, a question presented on the appeal from the judgment, which, I think, requires a reversal of the judgment, unless the plaintiff should consent to reduce the amount of the verdict. The fifth clause of the contract which the plaintiff seeks to enforce provides that:

"It is therefore covenanted and agreed by the party of the first part [defendant] that in case said party of the first part shall become insolvent, or shall fail in any way to keep and perform all the terms of this agreement on its part to be kept and performed, there shall forthwith become and be due and payable, as liquidated damages to the party of the second part, and not as penalty, the sum, if the same shall become due within two years after the date thereof, of twenty-two thousand five hundred ($22,500.00) dollars, and if the same shall become due after the term of two years the sum of thirty-five thousand ($35,000.00) dollars, at which respective sums said damages are hereby appraised, assessed and fixed, but at any and every time such liquidated damages shall be reduced by crediting thereon all the payments theretofore made, as provided by paragraph 'four' hereof."

Counsel for the defendant requested the court to charge:

"As it conclusively appears that the mode of the defendant's performance of said contract in connection with the manufacture and sale of said goods continued unchanged after the expiration of the first two years of the contract, the only breach thereof upon which this action can be predicated, if there was any, must have occurred during the first two years of the life of the contract; and, if the plaintiff is entitled to recover, in no event is he entitled to recover more, apart from interest, than the sum of $22,500, less the payment of $11,500 made under the contract."

Which the court refused to charge, and to which the defendant excepted.

I think that the defendant's liability was limited to the sum of $22,500, less the payments made, which were conceded to aggregate the sum of $11,500. The allegations of the complaint as to the breach of the contract is that the defendant "has wholly neglected and refused, and still wholly neglects and refuses, to perform said agreement on its part in respect to the manufacture and sale of the varnishes made by the use of said inventions, formulas, secrets, and processes, and has, notwithstanding and in violation of the terms and requirements of said agreement in that behalf, ceased for several years to manufacture and sell said varnishes, and has at all times, since the execution and delivery of said agreement as aforesaid,

wholly failed, neglected, and refused, and still wholly fails, neglects, and refuses, by all reasonable endeavors, to push the manufacture and sale thereof, and at all times to actively continue such manufacture and sale to any and all extent that the market will warrant, as in said agreement particularly provided." This in form is an allegation of a total failure .of the defendant to at any time perform the contract. There is no allegation that the defendant, for two years, performed the contract, and then subsequently refused to continue its performance. . The contract was dated the 26th day of January, 1893, and the action was commenced on the 22d day of August, 1897. The clause of the contract which this allegation of the complaint alleges that the defendant has wholly neglected and refused to perform, and which the defendant has at all times, since the execution and delivery of the said agreement as aforesaid, wholly failed, neglected, and refused, and still wholly fails, neglects, and refuses to perform, is that:

"The party of the first part agrees immediately to enter upon and by all reasonable endeavors to push the manufacture and sale of all grades of said goods, and at all times to actively continue such manufacture and sale to any and all extent that the market will warrant, until the said royalties of fifty thousand dollars shall have been paid. The said party of the first part expressly agrees, also, to push the sale of the higher priced goods, made under such processes, etc., with the same efforts which it shall use for the lower priced goods made under such processes,"

Upon the first appeal (52 App. Div. 540, 65 N. Y. Supp. 486) the question as to the breach of the contract was discussed; Mr. Justice Hatch there saying:

"In addition to this we are unable to find any evidence, assuming that there was a breach, as to when the breach took place, prior to the commencement of the action. The answer does not fix any date. Its statement is general that for several years the defendant had ceased to manufacture. As this statement was made in December, 1897, it might bring it within the first two years after the execution of the contract. The letter is more specific, and fixes the date when it ceased to manufacture, or attempt to, in July, 1894. The plaintiff, however, states that he knew that the defendant did not manufacture from the formula from the beginning. This question was of importance. If the breach occurred in the first two years of the contract, the damages were measured at the sum of $22,500, less payments. The plaintiff insists that the breach consists in failing to manufacture 113, and of this breach he says he knew almost at the beginning of the performance of the contract. Why, then, was it not a question of fact as to when the breach occurred? And if so, and it was within the first two years, upon what basis could the court award judgment for the larger sum stipulated as liquidated damages?"

The evidence of the plaintiff showed: That he delivered a copy of this formula to the defendant two days after the execution of the contract. That on February 11, 1893, the defendant selected one of its own men, named O'Brien, to whom the plaintiff was to impart the secret process by which this varnish was to be manufactured. On the 1st of February, in the same year, the plaintiff had turned over to the defendant a factory that he established in Jersey City for the manufacture of this varnish. That this plant was used by the defendant about 13 months. That the plaintiff attended at the factory in Jersey City in carrying out the contract, or in giving instruc-

tion to O'Brien, until the middle of April, 1893. After the middle of April the plaintiff did not go to the factory often—two or three times—until the latter part of June, 1893. On July 19, 1893, the defendant wrote to the plaintiff, saying that everything seemed to be going along possibly as well as could be expected, "and Robert will make alternately the No. 113 and No. 871, as well as rubbings and gears." In February, 1894, the defendant discontinued the Jersey City factory, and moved the manufacture of this varnish to its works on Long Island City. On the 13th of April, 1894, the plaintiff went to the Long Island City works to make the varnish for the benefit of the defendant's superintendent and O'Brien. When he got there, he found the furnace was not such as was required for the manufacture of his varnish, and that the defendant had not supplied the materials which were to be used under the plaintiff's formula. The defendant, however, did manufacture some varnish at that time, but none of the 113. The plaintiff then testified that in June, 1896, he had a conversation with Mr. Alexander, who represented the defendant, and that Mr. Alexander informed the plaintiff that the defendant had not made varnishes from his formula from the time he came into the premises. On the 17th of June, 1896, the plaintiff addressed a letter to the defendant, asking whether the defendant was still manufacturing varnishes from the plaintiff's formula, or, if they were not, when did they cease to so manufacture? In reply the defendant wrote as follows:

"We are not manufacturing varnishes on your formula. The last time we tried to make goods according to your formula was under your direct supervision in July, 1894, and the results obtained were not at all satisfactory."

On July 20th the plaintiff wrote to the defendant, demanding that the defendant proceed with the manufacture of varnishes as it had contracted with the plaintiff to do; and, again, on July 11, 1896, the plaintiff wrote, saying:

"You will, however, please take notice that I again and herewith enter my protest against your continued, and against your longer, practice of violation of the contract between us."

Upon cross-examination the plaintiff said that, when he finally left the Jersey City factory in June, 1893, he had performed his obligation in instructing O'Brien; that O'Brien was not qualified to make varnishes; and that he (plaintiff) stated that fact to one of the defendants. There were also introduced letters in relation to the attempt by the defendant to make the varnishes according to the plaintiff's formula in the Long Island City factory in April, 1894. After the varnish had been made on that day the defendant wrote to the plaintiff, asking whether everything was satisfactory to him, and if the goods were made according to the plaintiff's formula. In reply the plaintiff wrote and said that they were not; that the ingredients necessary to make the varnish exactly in accordance with his formula were not forthcoming, and consequently he could not make the same according to formula. In reply the defendant wrote, expressing surprise and asking to be informed what materials had not been supplied, and asking the plaintiff to again come to the factory

and make some varnish which he could pronounce made according to the formula, and they would supply all the ingredients. The plaintiff replied on April 24, 1894, writing:

"I do not see of what service I can be in giving another day attendance at your L. I. City factory. You have the formulas for the varnishes, exactly as they were made by me—severally as to ingredients, manner, and proportions for the fabrications thereof. These, being followed, will give the varnish as made by me. The one point to be critically watched for, and taken advantage of when appeared, I have gone over and over, again and again (with the party appointed by you to receive the instructions), as also the observances to be obeyed in the preparation of the dryer—how added, etc., etc., etc. Still, if you deem it essential that I should go over these items again with Robert (there seeming to be no new attaché appointed by you to receive instructions), I will again effect my arrangements upon your advice, so as to afford you another day for the purpose of giving instructions to whom you shall appoint to receive the same—whether Robert or whomsoever else."

Subsequently the defendant wrote to the plaintiff, stating that they were endeavoring to follow his instructions, and further stating that the defendant had made some varnishes according to the plaintiff's formula about a year before. After July 19, 1894, the plaintiff had an interview with the defendants, at their request, at which they discussed the contract, and it does not appear that the plaintiff ever again took any part in the manufacture of these varnishes; nor did the plaintiff, so far as appears, do anything further in relation to carrying out any obligations of the contract to be performed on his part. The plaintiff expressly testified that he had knowledge of the kind of varnish that the defendants had manufactured during all of this period. He received monthly reports of the kind of varnish manufactured and the amount of royalty due him under his contract. He testified that he was at the Jersey City factory six or seven times between April, 1894, and October, 1896, and saw O'Brien every time he went there, and Sharkey at other times. In all the statements submitted by the defendants it appeared that none of 113 varnish had ever been manufactured after the first few months in the factory at Jersey City.

In all the testimony there is not a particle of evidence to justify a finding of a breach of the contract, except that based upon the defendant's own statement that they had never manufactured under the plaintiff's formula, and the evidence contained in the written statements furnished by the defendant that no varnish No. 113 had ever been manufactured; and it is upon the failure of the defendants to comply with its agreement immediately to enter upon, and by all reasonable endeavors to push, the manufacture and sale of all grades of said goods, and at all times to actively continue such manufacture and sale to any and all extent that the market will warrant, that plaintiff bases his claim of a breach of the contract by the defendant. There is evidence to show that the defendant did not comply with this agreement, and it is this, and this only, that justified a finding that there was a breach of the contract. It is clear that upon this proof the breach occurred within two years after the date of the contract. It is not a case where the defendant had commenced to manufacture and sell and then suspended the manufacture and sale, but it never commenced to manufacture and sell the varnish, and the breach

that the jury have found that did occur occurred immediately after the execution of the. contract. It seems to me clear that under the fifth clause of the contract the amount of liquidated damages for a breach of the contract became due, if ever, within two years of the date of the agreement, and thus it seems to follow that under the agreement the plaintiff, suing to recover the amount agreed to be paid by the contract, was entitled to $22,500, less the amount actually paid. I think, therefore, that the jury having found that there was a breach of the contract by the defendant, and that finding being supported by the evidence, the plaintiff was entitled to have the jury instructed that from the undisputed evidence the breach occurred within two years from the date of the contract, and that the amount to which the palintiff was entitled was $22,500, less the amount that was conceded to have been paid, $500, amounting to $11,000, with interest.

The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event, unless the plaintiff stipulates to reduce judgment to $11,000 and interest; and, if the plaintiff so stipulates, the judgment and order, as reduced, should be affirmed, without costs.

PATTERSON, J., concurs.